UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at GREENEVILLE

TERRY WOODS )
)
v. ) NO. 2:07-CV-232
) (NO. 2:03-CR-69)
UNITED STATES OF AMERICA ) *Jordan/Inman*

## **MEMORANDUM OPINION**

Through his counsel, petitioner Terry Woods brings this motion to vacate, set

aside, or correct his sentence under 28 U.S.C. § 2255. In his motion and two

supplemental pleadings, petitioner alleges numerous claims as grounds for relief from

his conviction and sentence for a crack-cocaine conspiracy (Docs. 156, 158 & 161 in

Criminal Action No. 2:03-cr-69).[1] The United States has filed a response, as well as

a supplemental response, maintaining that none of the asserted grounds furnish a

basis for relief (Docs. 160 & 164). The motion, thus, is ripe for disposition.

### **I. Standard of Review**

This Court must vacate and set aside a petitioner's conviction if it finds "there

has been such a denial or infringement of the constitutional rights of the prisoner as

to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. To prevail

_____

[1]    All subsequent citations to the record refer to the criminal case file.

under § 2255, a petitioner "must show a 'fundamental defect which inherently results in a complete miscarriage of justice,' or an error so egregious that it amounts to a violation of due process." *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990) (quoting *Hill v. United States*, 368 U.S. 434, 428 (1962)).

Under Rule 8 of the Rules Governing Section 2255 Proceedings in the United States District Courts, the court is to determine, after a review of the answer and the records of the case, whether an evidentiary hearing is required. If the motion to vacate, the answer, and the records of the case show conclusively the petitioner is not entitled to relief under § 2255, there is no need for an evidentiary hearing. *Baker v. United States*, 781 F.2d 85, 92 (6th Cir. 1986). The Court **FINDS** no need for an evidentiary hearing in the instant case and will **DENY** petitioner's motion for such. (Doc. 162).

## II. Procedural Background

In October of 2004, a jury convicted petitioner of conspiracy to distribute and possess with the intent to distribute five kilograms or more of powder cocaine and 50 grams or more of crack cocaine from February 2001 to September 2003, in violation of 21 U.S.C. § 846 and § 841(a)(1). For these offenses, petitioner received a life term of confinement. Petitioner filed a direct appeal in the United States Court of Appeals for the Sixth Circuit, but his appeal was denied, *United States v. Woods*, 197 Fed.

Appx. 524, 2006 WL 1866843 (6th Cir. June 29, 2006), as was his petition for a writ

of certiorari by the Supreme Court. *Woods v. United States*, 549 U.S. 1013, 127 S.Ct.

541, 166 L.Ed.2d 401, 75 USLW 3235 (2006). He now brings this instant § 2255

motion.

## III. Facts

The following account is taken from the Sixth Circuit's opinion on direct

appeal.

> North Carolina authorities, investigating drug-trafficking allegations,
> searched [Petitioner's and his Co-defendant's] joint residence in July
> 2002 and seized firearms, ammunition, powder and crack cocaine, and
> $20,000. [Petitioner] pleaded guilty in state court to possession with
> intent to sell or deliver marijuana. . . . The government sought to
> introduce, and [petitioner] moved to exclude, evidence of these prior
> seizures at [his] federal trial. The district court initially declined to
> admit evidence of the seizures from the state court convictions,
> expressing doubt about the "spatial" connection between the North
> Carolina evidence and the federal charge. Upon the government's
> request, the court reserved its final decision until the government laid a
> proper foundation in compliance with *United States v. Hardy*, 228 F.3d
> 745, 748 (6th Cir.2000). After government witnesses Norton and
> Johnson testified, the district court admitted the evidence.

*Woods*, 197 Fed. Appx. 524, *526, 2006 WL 1866843, *1. After addressing

petitioner's challenge to the admission of that evidence, the circuit court of appeals

detailed other proof connecting petitioner to the drug-trafficking conspiracy in

Tennessee, which had been presented through the testimony of several witnesses and upon which he had been convicted.

## IV. Discussion

In his § 2255 pleadings, petitioner alleges eight grounds for relief. They are: (1) that, in multiple instances, he received ineffective assistance of counsel; (2) that counsel's alleged errors, singly and cumulatively, denied him due process of law; (3) that he was denied equal protection of the law due to the sentencing disparity between crack cocaine and powder cocaine; (4) that he was denied his right to a jury trial to decide whether he had prior qualifying convictions; (5) that he was denied his right to have all sentencing issues, including his prior convictions, proven beyond a reasonable doubt; (6) that his life sentence amounts to cruel and unusual punishment; (7) that the failure to eliminate the aforementioned sentencing disparity violates a congressional mandate; and (8) that, while each asserted error alone constitutes grounds for a new trial, the cumulative effect of all errors strongly supports a new trial. For the sake of organization, some separately-numbered claims have been grouped together.

## A. **Ineffective Assistance**.

Criminal defendants have a right to the effective assistance of counsel at trial. *See Strickland v. Washington*, 466 U.S. 668 (1984). To prevail on a claim of

4

ineffectiveness of counsel, a petitioner must meet a two-prong test. *Id*. at 687. He must demonstrate: 1) a deficiency of performance on the part of his attorney and 2) actual prejudice flowing therefrom. *Ibid*.

There are certain guidelines to be observed by a court considering an ineffectiveness claim. In assessing counsel's performance, a court is to presume, in view of the circumstances, that counsel's questioned actions might have been sound strategic decisions. *Id*. at 689. The alleged errors or omissions must be evaluated from counsel's perspective at the time the conduct occurred and under the circumstances of the particular case. *Ibid*. A lawyer's performance will be considered constitutionally deficient only if the challenged actions fall "outside the range of professionally competent assistance." *Id*. at 690. In sum, a petitioner must show that counsel made errors so serious that he was not functioning as counsel guaranteed by the Sixth Amendment in order to establish deficient performance. *Id*. at 689.

In addition to deficient performance, a petitioner must also show actual prejudice. A petitioner will satisfy the prejudice requirement in *Strickland*'s test if he shows that there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id*. at 694. A determination of whether counsel's performance was deficient is unnecessary where

there is an insufficient showing of prejudice. *Id*. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

The Court now applies these established standards to the specific factual allegations upon which petitioner has based his ineffectiveness claim.

1) Failure to make an opening statement.

Petitioner was represented at trial by his retained attorney, A. Wayne Harrison of Greensboro, North Carolina. As the first instance of ineffectiveness, petitioner alleges that Mr. Harrison did not conduct an opening statement but instead deferred to co-defendant's counsel for his statement. However, petitioner misreads the record. True, Mr. Harrison deferred to co-defendant's counsel "to open our opening"(Doc. 119, Trial Tr. at 31). But it is also true that Mr. Harrison followed up his fellow attorney's opening statement with an opening statement of his own *(Id*. at 33-35). Because this claim is completely contravened by the record, it justifies no relief.

2. Eliciting Unfavorable Information on Cross-Examination.

a) *Witness Tyner*: According to petitioner, while this witness said "something incriminating" on direct examination, Attorney Harrison brought out on cross examination that the witness bought drugs from petitioner. To illustrate his claim,

6

petitioner refers the Court to "p. 57 ln. 59," presumably, citing to the portion of the trial transcript containing this witness's testimony (*Id.* at 57-59).[2]

The Court pauses to note that, as the master of his pleadings, petitioner is tasked with constructing his arguments clearly and concisely, and he must also clearly set forth any examples he employs to support his claim. The Court cannot be expected to develop petitioner's arguments or to search the record to discern "something incriminating" or to discover prejudice flowing from counsel's conduct on cross examination.

Nonetheless, the Court will assume, as has the United States in its response, that the "something incriminating" adverted to by petitioner is Mr. Tyner's statement on direct that he purchased drugs from "the Woods" and that the attorney error which allegedly transpired on cross examination was the witness's statement that he purchased cocaine specifically from petitioner.

This exchange occurred during Mr. Tyner's direct examination by the attorney for the United States:

Mr. Smith:  Now would you describe for the jury, sir, how you would go about actually getting the crack cocaine in North Carolina?

---

[2] There is no "ln. 59" on page 57 since there are only 25 lines per page of transcript.]

7

Mr. Tyner: I would, I would - - I go to certain people, I go to different people sometimes, my main - - I would go to Terry and get crack from him, come to Tennessee and sell it, or sometimes go to other people . . . that's quite a few other people that were involved I'd go to and get it.

. . .

Mr. Smith: What's his full name, do you know it?

Mr. Tyner: No, I just know Terry Woods, I don't know his full name.

(*Id.*, Test. of Tedrick Tyner at 41-43). Mr. Tyner also indicated that he had known petitioner for years and had started doing drug business with him around 1995, or "somewhere around there." (*Id.* at 43). The witness estimated that he had gone to the Woods' residence to buy cocaine ten or more times in 2001 and five to seven times in 2002 and that the quantity he had purchased in 2001 was twenty-five to thirty ounces and, in 2002, fifteen ounces.

This witness's testimony on direct examination was quite damaging to petitioner since it linked him unequivocally to the cocaine conspiracy. Mr. Harrison chose one of the few options available to him on cross examination—to pursue a strategy calculated to undermine that earlier testimony. Through counsel's deliberate

inquiries concerning those stated drug transactions, he sought to imply that the witness's memory and recollection was flawed and that the witness was not credible because he would say or do anything to ingratiate himself with the government (including testifying falsely or unfavorably against petitioner) and, thereby, lessen the sentence he was facing for his own participation in the drug conspiracy.

There was a risk, of course, in attacking the witness's credibility: Counsel might prompt a response incriminating to his client. The fact that, indeed, this is what happened makes Mr. Harrison's plan of attack on the witness's believability no less strategic and no less reasonable than it was when it was formulated by counsel. *See United States v. Figueroa,* 15 F.3d 706, 711 (7th Cir. 1994) ("Thus, in hindsight, [counsel's] strategy completely backfired. But a retrospective vista is precisely the wrong perspective from which to determine whether a criminal defendant received effective assistance. "). Given the presumption that counsel's challenged conduct must be considered sound trial strategy, as well as the difficulty encountered by a petitioner in challenging counsel's tactical decisions, the Court finds that Mr. Harrison's cross-examination of this witness fell "within the wide range of reasonable professional assistance." *See Strickland*, 466 U.S. at 689; *see also Jones v. Harry* ("Doing nothing to counter these damaging claims and implications on cross-

9

examination would not have been a wise choice, despite what [petitioner] argues now.").

The Court also finds that there is no prejudice since the jury heard the same witness testify, during his direct examination, that he bought cocaine in North Carolina from "certain people. . . different people. . .sometimes, my main - - I would go to Terry and get crack from him, come to Tennessee and sell it . . . ." (Doc. 119, Trial Tr., Tyner Test. at 41.) And too, the witness gave an estimate, in his direct testimony, as to the number of drug transactions and the amount of cocaine involved in his dealings with "the Woods." Finally, as the United States points out in its response to the motion to vacate, the testimony of this witness was cumulative to that of various others (i.e., Messieurs Rick Hunt, Dwayne Norton, and Garrett Johnson) who stated that petitioner sold them cocaine during the relevant period. Having failed to show a prejudicial performance on the part of his attorney, this claim likewise fails.

b) *Witness Wright*: Citing to "p. 81 ln.4," petitioner also charges that Attorney Harrison made the same type of error when he elicited testimony from witness William Wright (Mr. Tyner's stepfather) that he saw petitioner in the trailer. Petitioner's citation is incorrect; there is no testimony about petitioner in that specific part of the record. In fact, line four on page eighty-one reads: "Well, really it didn't do anything but for temporary. . . ." (*Id.*, Test. of William Wright at 81.) Petitioner's

10

careless citations to the record and his failure to support his claims with any developed argument or analysis does a disservice to the Court which must decide those claims. Nonetheless, the Court has found, on lines twenty-four and twenty-five of the specified page, this testimony by Mr. Wright: "yes, I seen [Terry] out there at the trailer on several occasions." Although there was testimony that the trailer was a situs for drug-dealing, this witness denied that he ever bought any drugs from petitioner or that he ever saw petitioner sell any drugs. (*Id.*, Wright Test. at 82.) Thus, eliciting the aforementioned response from this witness resulted in absolutely no prejudice and affords no basis for § 2255 relief.

c) *Witness Johnson*: Citing to page 211 of the trial transcript, petitioner asserts that Garrett Johnson testified on direct that he had told petitioner that he (the witness) was going to be making a lot of money, but did not testify that he told petitioner that the money would be made on cocaine. However, while cross-examining Mr. Johnson, counsel elicited damaging evidence, to wit, that the witness did tell petitioner that the money would be made on cocaine. Petitioner now claims that Attorney Harrison gave him ineffective assistance thereby.

First of all, "a defense counsel's elicitation of damaging testimony does not of itself rise to the level of ineffective assistance." *Galloway v. United States*, 187 Fed. Appx. 507, 510, 2006 WL 1813909, *3 (6th Cir. June 29, 2006) (citing *Campbell v.*

*United States,* 364 F.3d 727, 734 (6th Cir. 2004), and *Scott v. Elo,* 302 F.3d 598, 607 (6th Cir. 2002)). But even if the Court assumes that Mr. Harrison's questioning amounted to a constitutionally deficiency performance, there was no ensuing prejudice. The transcript shows that the following exchange occurred:

> Mr. Smith: What if anything would you tell Marshane Woods about where you were going with the cocaine?
>
> . . .
>
> Mr. Johnson: That I was going to Tennessee with the cocaine making a lot of money.
>
> Mr. Smith: What if anything did you tell Terry Woods?
>
> Mr. Johnson: Same thing, I was going to Tennessee making a lot of money.

*(Id.,* Test. of Garrett Johnson at 208).

As shown by the transcript, Mr. Johnson testified that he told Terry Woods the "same thing" he told his brother, i.e., that he was going to Tennessee with the cocaine making a lot of money. Omitting the phrase "with the cocaine" in his response is inconsequential because if he told petitioner the "same thing" he told his co-defendant brother, and he so testified, then he informed petitioner that he was reselling the cocaine in Tennessee at a significant profit. Moreover, other witnesses

12

testified similarly to Mr. Johnson. Petitioner simply has not shown that there is a reasonable probability that , but for counsel's challenged questioning of this witness, the outcome of his trial would have been different.

3. Failure to Move for Severance or a Mistrial.

a) *FBI Agent*: Without citing to the record, petitioner claims that co-defendant's counsel called an agent with the Federal Bureau of Investigation (FBI) to the stand who gave, as anticipated, damaging testimony about his investigation of the Woods brothers and that counsel should have asked for, but did not, a mistrial or a severance at that time or at the pretrial stage.

Petitioner has not described the contents of that testimony, specified how it damaged petitioner, or explained how the failure to seek a mistrial or a severance, either before or at the trial, amounted to constitutionally ineffective assistance. *See Strickland,* 466 U.S. at 698 (A petitioner must show both deficient performance and resulting prejudice to succeed on claims of ineffective assistance of counsel.). Therefore, given the lack of any developed argument to sustain a finding of ineffective assistance of counsel, the Court cannot and does not so find. *See Olden v. United States*, 224 F.3d 561, 567 (6th Cir. 2000) (rejecting claim that counsel was ineffective for failing to move for a mistrial because petitioner had not shown how

13

"his interests were compromised by the admissibility of the evidence he vaguely refers to, and has not even attempted to allege that he was prejudiced").

But even if the facts not offered by petitioner are those assumed by respondent in its discussion of this matter, the claim has no merit. As the United States points out, an FBI agent testified, grudgingly, on behalf of the co-defendant, stating that, during a wide-ranging investigation into drug-dealing in Tennessee, some 200 to 300 audio recordings were made and that, although the Tennessee investigation eventually led to the investigation of the Woods, neither petitioner's nor his brother's names were contained in the list of some fifty individuals who were identified on those tapes. (Doc. 160 at 19; Tr. T at 284-96). Petitioner's attorney passed on cross-examination of the witness and did not move for a mistrial or a severance—a shortcoming which constituted ineffective assistance, according to petitioner.

Joint trials of co-defendants are generally favored; a habeas petitioner bears a heavy burden to show that he was denied a fair trial by the failure to sever his trial from a co-defendant's when both allegedly participated in the same offense. *See United States v. Horton*, 847 F.2d 313, 317 (6th Cir. 1988); *see also Richardson v. Marsh*, 481 U.S. 200, 210 (1987) (observing that joint trials avoid inconsistent verdicts and the scandal and inequity of such verdicts and also enable a more accurate assessment of relative culpability).

Petitioner has not carried his heavy burden because he has not described any prejudice, much less prejudice of a "substantial, undue, or compelling" nature, which would have denied him a fair trial and warranted a single trial to determine his guilt or innocence. *United States v. Lopez*, 309 F.3d 966, 971 (6th Cir. 2002) (citing *United States v. DeFranco*, 30 F.3d 664, 669-70 (6th Cir. 1994)). Nor does the Court see anything in the record to show that petitioner's fundamental right to a fair trial was denied by virtue of the joint trial with his co-defendant brother.

Their defenses were not mutually antagonistic because they did not point the finger of guilt at each other. Instead, they offered identical defenses—both acknowledging that there was proof of the buying and selling of cocaine, but arguing that there was no credible evidence showing that either of them agreed with two or more individuals to distribute and possess with the intent to distribute cocaine in Tennessee. Each brother's defense, succinctly stated, was: Random drug deals, "yes"—drug conspiracy, "no."

And absent any allegation of prejudice so great as to deny petitioner a fundamentally fair trial, the Court would not have granted a motion to sever. Indeed, "[i]n the context of conspiracy, severance will rarely, if ever, be required." *United States v. Searing,* 984 F.2d 960, 965 (8th Cir.1993). Furthermore, because the testimony by the FBI agent was admissible, there were no grounds for a mistrial.

*United States v. Bates*, 917 F.2d 388, 395 (9th Cir. 1990) (When an error certain to result in reversal occurs, a trial court properly exercises its discretion in declaring a mistrial.).

As the Sixth Circuit explained in *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992), *cert. denied*, 508 U.S. 975 (1993): "Counsel is constitutionally ineffective only if performance below professional standards caused the defendant to lose what he otherwise would probably have won." *See also West v. Seabold*, 73 F.3d F.3d 81, 84 (6th Cir.), *cert. denied*, 518 U.S. 1027 (1996). Since there was no basis for severing the trial or declaring a mistrial, counsel's failure to so move did not ensue in any prejudice to petitioner's defense.

b) *Co-defendant's Prior Conviction*: Petitioner claims that his attorney failed to produce evidence that petitioner's co-defendant was the one who had a prior cocaine conviction, not petitioner, and that counsel should have sought a severance to eliminate any prejudice resulting from proof of the co-defendant's prior drug conviction and counsel's failure to show that the cocaine charges against petitioner had been dropped.

This claim is tied to the cocaine-trafficking charges filed against petitioner and his co-defendant after North Carolina law enforcement searched their home and found drugs, weapons, and a large sum of money. In state court, petitioner pled guilty to

16

a marijuana offense and the cocaine charge against him was dismissed, but his co-defendant brother pled guilty to the cocaine offense.

First of all, had defense counsel sought to introduce evidence of the co-defendant's prior conviction, as opposed to evidence of the search and the drugs and firearms discovered during the search, he would not have been permitted to do so. Neither petitioner nor his brother testified, and, therefore, evidence of the prior cocaine conviction was unavailable as impeachment evidence under Federal Rule of Evidence 609. Equally important, his brother's prior cocaine conviction was not relevant as to petitioner's guilt or innocence. *See United States v. Ham*, _ F.3d _, __ , 2011 WL 43429, *4-*5(6ᵗʰ Cir. Jan. 7, 2011) (exclusion of non-testifying individual's prior crack cocaine conviction was proper because it was not impeaching nor relevant since the prior drug conviction did not make the question of defendant's guilt " more or less likely.")

Secondly, Federal Rule of Evidence 404(b) provides that proof of "other crimes, wrongs, or acts" may not be admitted to prove the character of a person for the purpose of showing that he acted in conformity with them, but such proof may be admitted for other proper purposes, such as motive, opportunity, intent, preparation, plan, knowledge, or absence of mistake. The only purpose for the introduction of such evidence, insofar as the Court can discern, would have been to show,

17

sequentially, that: (1) because the co-defendant had been convicted of one offense involving cocaine, he was likely to have committed the one for which he was being tried jointly with petitioner and, (2) that petitioner, who had been charged with the same offense, had had those charges dropped, and, therefore, was unlikely to be guilty of the present charge. Such evidence would not have been permitted at trial because its introduction would have fostered the very conclusion—that the co-defendant was guilty because had acted in conformity with his character—Rule 404(b) was designed to foil.

Nor can the Court conceive of why any defense attorney would have run the risk of offering evidence to a jury that his own client had been charged with a prior cocaine offense, even if he also offered proof that the charge had been dismissed, because it might have concluded, based on the mere fact of the prior charge, that said client was guilty of the cocaine offense at issue. *Cf. Moore v. Parker*, 425 F.3d 250, 254 (6th Cir. 2005) (no prejudicial performance where counsel opted to avoid "opening the door" by restricting testimony about a defendant's background since it "would likely have made him look even worse to the jury"). Moreover, the same legal rules concerning severance which were applied to the previous claim apply to this one as well: Petitioner must show that the joint trial "result[ed] in prejudice so great as to deny his . . . right to a fair trial." *Davis v. Coyle*, 475 F.3d 761, 777 (6th

Cir. 2007) (quoting *United States v. Lane,* 474 U.S. 438, 446 n. 8 (1986)). In this claim, as in the prior one, petitioner has not shown prejudice because the co-defendant's prior cocaine conviction was not introduced at the joint trial and because no prejudice can result from evidence of a prior conviction which is not admitted at trial. Finally, if petitioner's true claim is that the evidence concerning the search in North Carolina tainted him unfairly since his co-defendant brother was the one who pled guilty to the cocaine charge in North Carolina, whereas he himself pled guilty only to an offense involving marijuana, that would miss the mark entirely. "Where evidence featuring one defendant is independently admissible against a codefendant, the latter cannot convincingly complain of an improper spillover effect." *United States v. O'Bryant,* 998 F.2d 21, 26 (1st Cir.1993) (collecting cases).

An attorney is not required to raise claims which lack a legal basis and are doomed to fail. *Krist v. Foltz,* 804 F.2d 944, 946-47 (6th Cir.1986). And, a lawyer cannot be ineffective when he does not raise such claims. *Greer v. Mitchell,* 264 F.3d 663, 676 (2001). For all these reasons, counsel's claimed failings do not amount to ineffective assistance.

4. Failure to Raise Distance Issue.

Petitioner suggests that, by failing to introduce proof that Burlington, North Carolina lies 163 miles from Johnson City, Tennessee, his attorney gave him

19

ineffective assistance. Petitioner has not explained how counsel's alleged shortcoming fell outside the wide range of reasonable professional assistance—and, as noted, this Court must presume that it did not, *see Strickland*, 466 U.S. at 690; nor has he overcome the presumption that the questioned action (or here, inaction) might well be considered sound trial strategy; nor has he shown that, but for counsel's failure to offer proof of the distance between the two cities, there is a reasonable probability that the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 689, 694. To prevail on this claim, petitioner must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Section 2254 Rules). [3] He has failed so to do and is entitled to no relief with respect to this claim of ineffective assistance.

## 5. Failure to Subpoena Tyner's Girlfriend.

Petitioner next charges his lawyer with failing to issue a subpoena for the girlfriend of witness Tedrick Tyner. It is petitioner's premise that if Tyner's girlfriend had been called as a witness, she would have testified that Tyner was lying. Again,

---

[3] For the most part, §§ 2254 and 2255 are counterparts of each other and the law applicable to one generally is applicable to the other. *Davis v. United States*, 417 U.S. 333, 345-44 (1974); *Steverson v. Summers*, 258 F.3d 520, 523 n. 4 (6th Cir. 2001) ("Title 28 U.S.C. § 2255 is essentially equivalent to § 2254, the former being a postconviction remedy for federal prisoners and the latter available to 'a person in custody pursuant to the judgment of a State court.'").

petitioner has presented no arguments or factual developments to flesh out his claim. The Court has been left in the dark as to the part of Tyner's testimony which is claimed to have been false; as to the basis upon which rests petitioner's conclusion as to the subject matter of this proposed witness's testimony; and as to the facts, if there are any, which show how petitioner was prejudiced by counsel's alleged error. Bare, conclusory allegations, unsupported by facts, cannot establish a constitutional violation. *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir. 1991).

## 6. Failure to Raise Prosecutorial Misconduct/Untimely Disclosure.

Petitioner charges that the prosecutor for the United States, as was his typical practice, failed to provide timely disclosure of material to the defense, as required by the Jenks Act, *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972),[4] and that petitioner's counsel was ineffective for failing to bring this to the Court's attention. However, "*Brady* generally does not apply to delayed disclosure of exculpatory information, but only to a complete failure to disclose" and a "'[d]elay only violates *Brady* when the delay itself causes prejudice.'" *United States*

---

[4] The State is obliged to turn over evidence in its possession that is favorable to the defendant and material to guilt or punishment, *Brady*, 373 U.S. at 87, and this material includes impeachment evidence. *Giglio*, 405 U.S. at 154-55. The Jencks Act, 18 U.S.C. § 3500, requires the United States' attorney to provide the defense with any material statement made by a witness to the government which is signed or otherwise verified by the declarant.

21

*v. Blood*, 435 F.3d 612, 627 (6th Cir. 2006) (quoting *United States v.Bencs,* 28 F.3d 555, 560-61 (6th Cir. 1994)).

Petitioner has not identified the tardily-disclosed evidence. He has not shown that it was material or demonstrated that the timing of the disclosure of the unidentified information undermined any witness' testimony or made a difference in the outcome at trial. Because petitioner has not shown any type of statutory or constitutional violation regarding the government's alleged belated disclosure of evidence, counsel did not render a prejudicial performance by failing to call the Court's attention to the *Brady/Giglio*/Jenks issue or to the conduct of the prosecutor.

7. Failure to Challenge/Seek Jury Instructions.

Petitioner claims first that counsel was ineffective for failing to object to the jury charge which required an overt act taking place in Tennessee because there is no requirement of proof of overt acts in drug conspiracies. In a related claim, petitioner also maintains that his attorney should have asked for an instruction on venue of the conspiracy.

In its response, the United States argues that the questioned instruction was permissible because it provided a basis for the jury to determine whether venue for the cocaine conspiracy prosecution was proper in this District. Respondent further maintains, citing to *United States v. Crozier*, 259 F.3d 503, 519 (6th Cir. 2002), that

22

it was required to prove to the jury that venue lay in this district since a conspiracy prosecution is proper in any district where an overt act in furtherance of the conspiracy is performed and, especially, since petitioner did not physically participate in the conspiracy within this District.

While petitioner is correct that an overt act is not an element of a federal drug conspiracy, respondent is also correct that, with regards to such charge, it bore the burden of proving that venue lay in the Eastern District of Tennessee. *See* U. S. Const. art III, § 2, cl. 3 (requiring that "trial of all crimes... shall be held in the State where the said Crimes shall have been committed)"; U. S. Const. amend. VI (guaranteeing a trial "by an impartial jury of the State and district where the crime shall have been committed"); Fed. R. Crim. P. 18 (providing that,"[e]xcept as otherwise permitted by statute or by these rules, the prosecution shall be had in a district in which the offense was committed"); and *United States v. Miller*, 111 F.3d 747, 751 (10th Cir. 1997) ("The burden of proof on venue always remains on the government."). A conspiracy offense, such as that charged against petitioner, is designated as a continuing crime; such a crime may be tried in any jurisdiction in which the conspiracy is planned or agreed to, or in which overt acts are performed in furtherance of the conspiracy. *Hyde v. United States,* 225 U.S. 347, 363, 365 (1912); 18 U.S.C. § 3237(a) (A continuing offense may be prosecuted "in any district in

23

which such offense was begun, continued, or completed."). Since there were at least two districts (e.g., the Middle District of North Carolina or this District) in which the conspiracy offense could have been tried, venue was at issue and was a fact to be found by a jury. Indeed, it might have been reversible error had the jury not been instructed that it must determine whether an overt act had taken place in this District and had petitioner objected to that omission. *Miller*, 111 F.3d 753-54.

The Court concludes that the jury instructions at issue were not improper, *see United States v. Nowak*, 448 F.2d 134, 140 (7th Cir. 1971) (approving instruction requiring that "at least one overt act as set forth in the indictment was committed"); that they were adequate to inform the jury as to venue, *see Sandroff v. United States*, 174 F.2d 1014, 1017–18 (6th Cir. 1949) (sanctioning charge to jury that "instruction that "to convict [it] must find that at least one alleged overt act in furtherance of the conspiracy had occurred within the trial district."); and that defense counsel did not render a prejudicial performance by failing to challenge permissible instructions or to seek instructions which essentially were already included in the jury charge. Petitioner is entitled to no relief on this claim of ineffective assistance.

8. Failure to Object to Sentence Disparity. Petitioner asserts that his lawyer gave him ineffective assistance by not objecting to the 100:1 crack cocaine to powder cocaine

24

ratio in sentencing—both in the statutory minimum mandatory and under the guidelines—to preserve the issue for further review.

The 2004 U.S. Sentencing Guidelines Manual, which was used in calculating petitioner's sentence, equated a given quantity of base cocaine (crack) to one hundred times the same quantity of cocaine hydrochloride (powder). Thus, a defendant whose offense involved 1 gram of crack was punished 100 times more severely than a defendant who had the same amount of powder cocaine. Amendment 706, effective November 1, 2007, addressed this sentencing disparity by modifying the 100:1 ratio, resulting in a two-level reduction in the base offense level associated with each quantity of crack. As of March 3, 2008, Amendment 706 was to apply retroactively. *See* USSG § 1B1.10 (revised Dec. 11, 2007).

However, there are two reasons why none of this helps petitioner. First, his sentence was driven by the amounts of cocaine base (50 grams or more) and powder cocaine (500 kilograms) determined by the jury. Doc. 121, Tr. T. 374. Those drug quantities, along with petitioner's two or more prior felony drug convictions—the government noticed five such convictions (Doc. 91)—required that he be "sentenced to a mandatory term of life imprisonment without release . . . ." 21 § 841(b)(1)(A)(ii)(II). Indeed, even if the crack cocaine were removed entirely from sentencing consideration, the statute called for a mandatory life term based on the

quantity of *powder* cocaine involved in petitioner's offense ( and, of course, the prior convictions).

Secondly, since petitioner was punished based on the statutory mandatory minimum, rather than a guidelines range that was subsequently reduced, Amendment 706 would not lower his range and cannot be used to reduce his sentence. *United States v. Johnson*, 564 F.3d 419, 423 (6th Cir. 2009) ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guidelines range, the statutorily required minimum sentence shall be the guideline sentence.")(quoting U.S.S.G. § 5G1.1(b)).

Since petitioner's sentence did not turn on the application of the sentencing guidelines, counsel's alleged shortcoming in failing to challenge the crack/powder ratio contained in those guidelines caused petitioner no prejudice. Because there was no prejudice, counsel did not furnish petitioner ineffective assistance and no relief is warranted with respect to this claim.

9. Cumulative Errors.    Petitioner maintains that the attorney errors claimed above, when viewed in toto, resulted in a denial of his right to due process of law. The Court has concluded that none of counsel's alleged failings amounted to error and, therefore, rejects the due process claim. *See Campbell v. United States*, 364 F.3d 727, 736 (6th Cir. 2004) (agreeing that "the accumulation of non-errors cannot collectively

amount to a violation of due process") (citations omitted).  Defense counsel is not
required to raise every non-frivolous issue requested by a defendant, *Jones v. Barnes*,
563 U.S. 745, 751 (1983), and, by logical extension, cannot be ineffective when he
fails to raise an issue which is legally groundless.

B. **Equal Protection.**

Petitioner claims that the crack/powder cocaine ratio is discriminatory against
African Americans, as is he, and that such race-based discrimination denies him equal
protection under the law.  Petitioner did not present this claim on direct appeal,
though, unquestionably, he had the opportunity so to do.

A claim that could have been but was not raised on direct appeal may not be
reviewed in a § 2255 motion, absent a showing of cause and actual prejudice to
excuse a failure to raise the claim previously. *Bousley v. United States,* 523 U.S. 614,
619 (1998); *United States v. Frady,* 456 U.S. 152, 166 (1982); *Elzy v. United States*,
205 F.3d 882, 884 (6th Cir. 2000).   In any event, petitioner cannot show actual
prejudice because the issue has already been decided by the Sixth Circuit, which
employed a rational basis standard of review to find that the ratio was reasonably
related to a legitimate governmental interest, *United States v. Little*, 10 F.3d 1197,
1210 (6th Cir.1993), *cert. denied,* 511 U.S. 1043 (1994) and *United States v.
Williams,* 962 F.2d 1218 (6th Cir.), *cert. denied,* 506 U.S. 892 (1992), and does not

27

discriminate against Blacks. *See United States v. Wimbley*, 553 F.3d 455, 463 (6th Cir. 2009) (citing *United States v. Hill,* 79 F.3d 1477, 1488 (6th Cir.1996)).

Because the Sixth Circuit has found that the ratio does not violate equal protection guarantees under the Fifth Amendment, *Hill*, 79 F.3d at 1488, and because this Court is bound by Sixth Circuit decisions, it must therefore decline petitioner's claim.

## C. **Prior Convictions**.

### 1) Jury-Trial Right.

Petitioner argues, in this claim, that he was denied his right to have a jury determine, beyond a reasonable doubt if he had prior qualifying convictions in this case. As in the previous issue, this claim could have been but was not raised on direct appeal and, absent cause and prejudice, may not be reviewed in a § 2255 motion. *Bousley,* 523 U.S. at 619; *Frady,* 456 U.S. at 166; *Elzy*, 205 F.3d at 884.

Even so, there is no prejudice because the issue lacks merit. The Sixth Circuit has explained why this is so.

In *United States v. Beasley*, this court stated that "in *Apprendi* and its progeny, including the recent decision in [ *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005)], the Supreme Court has uniformly excepted 'the fact of a prior conviction' from its general rule that sentence-enhancing facts must be found by a jury and proved beyond a reasonable doubt." 442 F.3d 386, 391 (6th Cir. 2006) (citations omitted). Further, in *United States v. Barnett*, we noted that

28

"[t]his Court, among others, has rejected the argument that *Apprendi* requires the nature of prior convictions to be determined by a jury, holding instead that the district court's authority to determine the existence of prior convictions was broad enough to include determinations regarding the nature of those prior convictions." 398 F.3d 516, 524 (6th Cir. 2005).

*United States v. Crowell*, 493 F.3d 744, 750 (6th Cir. 2007).[5]

This claim likewise is rejected.

2. <u>Denial of Due Process</u>. Petitioner maintains, in this claim, that he was denied his right under the Fifth Amendment to require the prosecution to prove, beyond a reasonable doubt, all sentencing issues, including prior convictions. Once again, petitioner had a chance to raise the claim on direct appeal and has waived it absent a showing of cause and prejudice. *Bousley,* 523 U.S. at 619; *Frady,* 456 U.S. at 166; *Elzy*, 205 F.3d at 884. And once again, petitioner has suffered no prejudice.

The Supreme Court has held that "under the Due Process Clause of the Fifth Amendment . . . any fact **(other than prior conviction**) that increases the maximum

---

[5]     The "*Apprendi* and its progeny" reference leads with *Apprendi v. New Jersey*, 530 U.S. 466 (2000), in which the Supreme Court held: "[O]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. Next is *Blakely v. Washington*, 454 U.S. 296 (2004), which is cited in the next to last claim, which ruled that the Sixth Amendment right to a trial by jury, as explained in *Apprendi,* also applies to an increase in a sentence, under state sentencing law, based on facts found by a judge, where the facts admitted in a defendant's guilty plea, standing alone, supported a much lower maximum sentence. Finally, there is *United States v. Booker*, 543 U.S. 220 (2005), where the *Blakely* reasoning was applied to the Federal Sentencing Guidelines.

penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Jones v. United States*, 526 U.S. 227, 243 n.6 (1999) (emphasis added).    Thus, the Fifth Amendment's Due Process Clause was not violated by the failure to prove petitioner's prior convictions to a factfinder beyond a reasonable doubt. *See, e.g., Crowell*, 493 F.3d at 750.

## D. **Burden of Proof**.

Petitioner asserts that he was denied his right to require the government to prove beyond a reasonable doubt all sentencing issues including prior convictions. This claim has been waived by petitioner's failure to offer it in his direct appeal and his failure to show ensuing prejudice. *Bousley,* 523 U.S. at 619; *Frady,* 456 U.S. at 166; *Elzy*, 205 F.3d at 884. And, it is rejected on the merits for the same reasons the previous one was declined. *See Jones*, 526 U.S. at 243 n.6.

## E. **Cruel and Unusual Punishment**.

Here, petitioner argues that the imposition of a life sentence without parole for three drug offenses when the triggering offense in federal court being a relatively small amount of crack cocaine constitutes cruel and unusual punishment. He points out that thirty-seven states provide no different penalties for crack cocaine and powder cocaine, and suggests that the Supreme Court has said held that sentences in other jurisdictions should be examined to determine whether a statute is cruel and

unusual. This claim, like the preceding ones, has been waived. *Bousley,* 523 U.S. at 619; *Frady,* 456 U.S. at 166; *Elzy*, 205 F.3d at 884. Moreover, it lacks merit under Eighth Amendment jurisprudence.

The Sixth Circuit, relying on the "narrow proportionality" analysis in *Harmelin v. Michigan*, 501 U.S. 957, 995-97 (1991) (Kennedy, J., concurring), decided that a mandatory term of life imprisonment without parole for a third felony drug conviction was not a grossly disproportionate punishment for a drug conspiracy crime which involved nearly 180 grams of cocaine base. *United States v. Hill*, 30 F.3d 48, 50-51 (6th Cir. 1994). Petitioner's drug conviction involved, according to his presentence report, 33,621 grams of powder cocaine and 2,195.53 grams of crack cocaine–a far greater amount than in *Hill*. Thus, the life sentence imposed was not grossly disproportionate and did not violate Eighth Amendment's prohibition of cruel and unusual punishments.

F. **Disparity in Sentencing**.

Petitioner claims here that the dramatically more sever punishment for offenses involving crack cocaine that those involving powder cocaine violates Congress's instruction to the Sentencing Commission to end sentencing disparity. This particular claim has been waived by petitioner's failure to submit it in his direct appeal. *Bousley,* 523 U.S. at 619; *Frady,* 456 U.S. at 166; *Elzy*, 205 F.3d at 884. Even if this

31

claim were not procedurally defaulted, petitioner did not receive a guidelines sentence. Instead, as the United States points out in its response, petitioner's life sentence was mandated by the statute, 21 U.S.C.§ 841(b)(1)(A), based on his three prior felony drug convictions.

## G. **Cumulative Errors.**

Petitioner contends that each of the errors asserted provides sufficient grounds for a new trial, but that, certainly, the cumulative effect of all the errors supports a new trial. As the Court has found no errors at all, this claim lacks merit.

## H. *Apprendi/Blakely/Booker* **Claims.**

Petitioner's last two claims were raised in his supplemental pleadings (Docs 158 & 161). In the first one, citing to *North Carolina v. Allen*, 359 N.C. 425, 615 S.E.2d 256 (2005), petitioner maintains that it violates the Sixth Amendment as stated in *Blakely v. Washington*, 542 U.S. 296 (2004), to enhance his federal sentence with prior convictions which themselves were enhanced beyond one-year sentences without benefit of jury factfindings to support the enhancement. In the next claim, petitioner cites to the same cases and makes essentially the same argument.

Petitioner failed to raise his jury-right claims on direct appeal, though he could have. The Sixth Circuit did not decide his appeal until June of 2006 and both *Blakely* and *Allen* were decided prior to that date. Thus, he has waived his claims unless he

can show cause and prejudice to excuse his procedural default. *Bousley,* 523 U.S. at 619; *Frady,* 456 U.S. at 166; *Elzy,* 205 F.3d at 884. No such a showing has been made.

Furthermore, the holding in *Allen*, i.e., that North Carolina's Structured Sentencing Act violated *Blakely*, excepted "prior convictions" from its ruling and applied its holding only to cases then pending on direct review or not yet final. *State v. Allen,* 359 N.C. at 426-27 and 437-38, 615 S.E.2d at 258, 264-65, *overruled on other grounds, State v. Norris,* 360 N.C. 507, 509, 630 S.E.2d 915, 916 (2006). Petitioner's five North Carolina felony drug convictions (four in 1986 and one in 1993) almost certainly were final before 2005.

In addition, this instant § 2255 motion is a collateral proceeding and this fact implicates the rule in *Teague v. Lane*, 489 U.S. 288 (1989). *Teague* holds that, in general, new rules of criminal procedure do not apply to cases that are final on direct review. The Supreme Court has declined to decide whether *Blakely* is retroactive, *Burton v. Stewart*, 549 U.S. 147, 149 (2007), and none of the circuit courts have found either *Blakely* or *Booker* to be retroactive. *See, e.g., United States v. Price*, 400 F.3d 844 (10th Cir.2005) (*Blakely* not retroactive to convictions which were final at time of decision); *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1246 (9th Cir. 2005) ("[T]he Supreme Court has not made *Blakely* retroactive to cases on collateral

33

review"); *see also Varela v. United States*, 400 F.3d 864 (11th Cir. 2005) (recognizing that federal prisoners invoking *Blakely* are likewise invoking *Booker*, which is not retroactive); *Humphress v. United States*, 398 F.3d 855 (6th Cir. 2005) (same); *McReynolds v. United States*, 397 F.3d 479, 481 (7th Cir. 2005) (same); *cf Booker*, 543 U.S. at 268 ("[W]e must apply today's holdings—both the Sixth Amendment holding and our remedial interpretation of the Sentencing Act—to all cases on direct review") (citations omitted).

To sum up, the final two claims have been procedurally defaulted and, alternatively, cannot be a basis for relief in this § 2255 motion given the retroactivity rule.

## V. Conclusion

Because the claims raised in this § 2255 motion have been procedurally defaulted or lack merit, the the Court will **DISMISS** this case.

## VI. Certificate of Appealability

Petitioner may not appeal a final order in this § 2255 case to the Sixth Circuit unless "a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1). The Court must now consider whether to issue a certificate of appealability (COA) should petitioner file a notice of appeal. Issuance of a COA depends entirely upon whether petitioner has made a substantial showing of the

denial of a constitutional right. *See* 28 U.S.C. § 2253(c)(2). A petitioner whose claims have been rejected on the merits meets the requirements of § 2253(c) by showing jurists of reason would find the assessment of the claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For claims rejected on a procedural basis, a COA is warranted if jurists of reason would debate the correctness of the Court's procedural ruling. *Porterfield v. Bell*, 258 F.3d 484, 485-86 (6th Cir. 2001).

The Court has individually assessed petitioner's claims under the relevant standards and finds those claims do not deserve to proceed further because they are not viable in light of the governing law and jurists of reason would not conclude the disposition of those claims was debatable or wrong. Thus, should petitioner file a notice of appeal in this matter, such notice will be treated as an application for a certificate of appealability, which is **DENIED**. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

A separate order will enter.

**ENTER**:

LEON JORDAN
UNITED STATES DISTRICT JUDGE