UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | No. 2:03-CR-069 |
| | ) | |
| TERRY WOODS | ) | |

**MEMORANDUM AND ORDER**

*Pro se*, the defendant moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). [Doc. 233]. The United States has responded in opposition to the motion [docs. 240, 246] and the defendant has submitted a reply. [Doc. 250].

The matter is now ripe for the Court's consideration. For the reasons stated below, the defendant's motion for compassionate release will be denied.

## I. BACKGROUND

In February 2005, this Court sentenced the defendant to life imprisonment. In January 2017, the defendant received an Executive Grant of Clemency which reduced his prison sentence to 360 months. [Doc. 203]. He is presently housed at FMC Butner with a projected release date of June 19, 2029. *See* Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited September 21, 2020). The defendant now moves for immediate release due to: the COVID-19 pandemic; obesity; sleep apnea; hyperlipidemia; and asthma.

## II. CARES ACT

As an initial matter, the defendant's motion also asks to be transferred to home confinement. The Court construes that request as being brought under Section 12003 of

the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. L. No. 116-136, 134 Stat. 281 (2020), which presently and temporarily provides for expanded prisoner home confinement. However, the CARES Act places decision making authority solely within the discretion of the Attorney General and the Director of the Bureau of Prisons ("BOP"). The Court therefore does not have power to grant home confinement under the CARES Act. The defendant's request for CARES Act relief must therefore be denied.

### III. COMPASSIONATE RELEASE

Section 3582(c)(1)(A)(i) of Title 18, United States Code, allows district courts to consider prisoner motions for sentence reduction upon a finding of "extraordinary and compelling reasons." That statute, as amended by the First Step Act of 2018, provides in relevant part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction ... and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission....

18 U.S.C. § 3582(c)(1)(A). Prior to the First Step Act, a motion for compassionate release could only be brought by the BOP Director, not a defendant. *See* 18 U.S.C. § 3582(c)(1)(A) (2017). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to file a motion for compassionate release after first asking the BOP to file such a motion

2

on his behalf. *See, e.g., United States v. Alam*, 960 F.3d 831, 832 (6th Cir. 2020). Beyond this change, the statute still applies the same requirements to a defendant's motion for compassionate release as previously applied to motions by the BOP Director. *See, e.g., United States v. Beck*, 425 F. Supp. 3d 573, 578-79 (M.D.N.C. 2019).

The United States Sentencing Commission has promulgated a policy statement regarding compassionate release under § 3582(c), which is found at U.S.S.G. § 1B1.13 and the accompanying application notes. *See United States v. McGraw*, No. 2:02-cr-00018-LJM-CMM, 2019 WL 2059488, at *3 (S.D. Ind. May 9, 2019). While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release, courts have universally turned to U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *Id.* at *2 (citations omitted). Moreover, the Court has no reason to believe that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider. *See id.* (concluding likewise).

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A)(i), the compassionate release analysis requires several findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether a movant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

3

A. **Exhaustion**

The defendant has previously submitted a request to the BOP which was construed as one for compassionate release, and more than 30 days have passed since that request was received by the warden. [Doc. 233, ex. 1]. The Court thus has authority under § 3582(c)(1)(A) to address the instant motion. *See Alam*, 960 F.3d at 832.

B. **Merits**

1. **Extraordinary and Compelling Reasons**

The Application Notes to guideline 1B1.13 provide, in material part:

1. Extraordinary and Compelling Reasons.— ... [E]xtraordinary and compelling reasons exist under any of the circumstances set forth below:

(A) Medical Condition of the Defendant.—

(i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

(ii) The defendant is—

(I) suffering from a serious physical or medical condition,

(II) suffering from a serious functional or cognitive impairment, or

(III) experiencing deteriorating physical or mental health because of the aging process,

that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

U.S.S.G. § 1B1.13 cmt. n.1(A).

The Court construes the defendant's motion as relying on subsection (A)(ii)(I). As mentioned above, he cites in support: the COVID-19 pandemic; obesity; sleep apnea; hyperlipidemia; and asthma.

The COVID-19 pandemic cannot alone justify compassionate release. *See, e.g., United States v. Shah*, No. 16-20457, 2020 WL 1934930, at *2 (E.D. Mich. April 22, 2020) ("[S]peculation as to whether COVID-19 will spread through Defendant's detention facility . . . , whether Defendant will contract COVID-19, and whether he will develop serious complications, does not justify the extreme remedy of compassionate release."); *see also United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

The defendant has submitted no documentation of the existence or severity of his cited health conditions. The United States, however, has filed four pages of BOP medical records [doc. 246] showing that the defendant indeed suffers from hyperlipidemia (high cholesterol) and sleep apnea. The United States additionally concedes that the defendant is obese. [Doc. 240, p. 10]. The medical record does not confirm the defendant's purported asthma.

In June 2018, the defendant's hyperlipidemia was controlled, asymptomatic, and responding well to medication. In April 2019, the condition was "[u]ncontrolled but asymptomatic," with diet and poor medication compliance being "an issue." In February 2020, the defendant's hyperlipidemia was again "[c]ontrolled and asymptomatic" with better medication compliance.

5

The defendant's sleep apnea is treated with a C-PAP device. In 2018 and 2019, he was not compliant with that treatment. As of February 13 of this year, he was "[m]ore compliant" and generally able to use the machine through the night.

As mentioned, the United States concedes that the defendant is obese. Obese persons are presently considered to be at increased risk of serious illness from COVID-19. *See* People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited September 21, 2020).

At the defendant's prison, there are seven prisoners and two staff currently diagnosed with COVID-19. *See* Bureau of Prisons, https://www.bop.gov/coronavirus/ (last visited September 21, 2020). Twelve other inmates and 21 staff have recovered. *Id.* These comparatively low numbers indicate that the preventative measures being taken by the BOP, as described by the United States in its response brief, are having an effect.

On the record before the Court, the defendant has not demonstrated extraordinary and compelling reasons for compassionate release. *See, e.g., United States v. Peaks*, No. 16-20460, 2020 WL 2214231, at *2 (E.D. Mich. May 7, 2020) (medically managed serious health conditions, paired with a generalized fear of COVID-19, fell short of "extraordinary and compelling reasons" justifying compassionate release). The defendant is receiving medical care for his hyperlipidemia and sleep apnea. His BOP SENTRY report indicates that he is a Care Level 1 (healthy or simple chronic care). The Court accordingly finds that the defendant has not met his burden of showing that he "is not expected to recover" from his cited medical conditions, or that he is presently unable to "provide self-care within the

6

Case 2:03-cr-00069-RLJ-MCLC   Document 252   Filed 09/28/20   Page 6 of 8   PageID #: 840

environment of a correctional facility." His motion will accordingly be denied.

## IV. APPOINTMENT OF COUNSEL

There is no constitutional right to counsel in post-conviction proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987) ("[T]he right to appointed counsel extends to the first appeal of right, and no further."); *Foster v. United States*, 345 F.2d 675, 676 (6th Cir. 1965) (holding that the constitutional right to counsel does not extend to collateral proceedings). A district court has *discretion*, under 18 U.S.C. § 3006A(a)(2), to appoint counsel when "the interests of justice so require." In exercising discretion as to whether to appoint counsel, a court should consider several factors, including the nature of the case, whether the issues are legally or factually complex, and the litigant's ability to present the claims for relief to the court. *See Lavado v. Keohane*, 992 F.2d 601, 605 (6th Cir. 1993).

The compassionate release arguments presented to the Court in this case are straightforward and familiar, not beyond the capability of an ordinary *pro se* litigant. The defendant's request for appointment of counsel will accordingly be denied.

## V. CONCLUSION

As provided herein, the defendant's motion for compassionate release and appointment of counsel [doc. 233] is **DENIED**.

7

The defendant's motions for sentence reduction pursuant to Section 404 of the First Step Act of 2018 [docs. 220, 224, 232] remain pending before the Court.

**IT IS SO ORDERED.**

ENTER:

s/ Leon Jordan
United States District Judge